**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SARAH LUTHE,**

           **Plaintiff,**         **CIVIL ACTION NO. 11-cv-14879**

    **vs.**

                      **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

           **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sarah Luthe seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security for her mental impairments under 42 U.S.C. § 405(g) and § 1383(a). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 11). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

## I.   RECOMMENDATION:

Because the Court finds that substantial evidence supports Defendant's final decision denying Plaintiff's request and that the ALJ's hypothetical situation presented to the vocational expert was not impermissibly contrary to law and encompassed Plaintiff's mental limitations, the Court recommends that Plaintiff's motion for summary judgment be DENIED (docket no. 9), that

Defendant's motion for summary judgment be GRANTED (docket no. 11), and that this case be DISMISSED.

## II.      PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of November 30, 2009, alleging that she had been disabled since June 1, 2007, due to depression and bipolar disorder.  (TR 89, 117.)  The Social Security Administration denied benefits.  (TR 27.) Plaintiff requested a *de novo* hearing, which was held via video on February 3, 2011, before Administrative Law Judge (ALJ) David Gatto, who subsequently found that the claimant was not entitled to Disability Insurance Benefits because Plaintiff was capable of performing other work in the economy.  (TR 30-40.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review.  Plaintiff filed her Motion for Summary Judgment (docket no. 9), Defendant filed his Motion for Summary Judgment in opposition to Plaintiff's Motion (docket no. 11), and Plaintiff filed a Reply (docket no. 12).

## III.     PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.      Plaintiff's Testimony[1]

Plaintiff was twenty-five years old at the time of the administrative hearing and twenty-two years old at the time of the alleged onset of her disabilities.  (Docket no. 9 at 7; TR 30.)  Plaintiff has a tenth-grade education and experience working as a fast-food worker.  (Docket no. 9 at 7; TR 38-39.)  Plaintiff claims that she hasn't worked since November 2009 because of her bipolar

---

[1]Plaintiff's testimony before the ALJ was extremely brief, and it appears that the ALJ filled in the missing information from pre-hearing submissions by the parties.  Thus, as cited throughout this section, the Court will likewise fill in relevant information from the Parties briefs and the remaining portions of the transcript.

2

disorder.  (TR 17, 19, 32.)  At the time of her hearing, Plaintiff had no source of income.  (*See* TR 17.)  She testified that she participates in housework, but she does not have a drivers license due to a fear of driving.  (TR 18.)  Plaintiff lives with "a friend and his parents," who are all getting disability payments.  (TR 17.)  She does not have any children.  (TR 17.)

Plaintiff testified that she has been diagnosed as Manic Depressive Bipolar, which causes her to sleep a lot and experience mood swings.  (TR 19, 20.)  She indicated that she is "very forgetful" and that she will "cry sometimes, like probably a couple times a week."  (TR 20.)  As a result, she has gained approximately 75 pounds, and she takes several naps every day.  (TR 20-21.)  Plaintiff testified that her medications help once in a while ("maybe two to three days a week"), but they only serve to "stabilize [her] moods."  (TR 19, 20.)  In general, her medications "keep [her] in a bad mood," and she "just can't seem to get out of it."  (TR 19, 20.)

On a typical day, Plaintiff will get up around 10:00 a.m., eat breakfast, shower, get dressed, and watch television.  "Once in a while," Plaintiff testified, "[she and her friend and his parents] will go out for dinner."  (TR 21.)  Plaintiff also testified that she used to have hobbies, but she "lost a lot of interest in a lot of things that [she] used to do."  (TR 18.)  Plaintiff no longer communicates with anybody.  (TR 18.)

**B.    Medical Record**

In July 2007, Plaintiff was examined at Community Care Services; her patient assessment indicates that she had a history of drug and alcohol abuse, she was on probation for four arrests over a period of five years, and she experienced serious depression and serious anxiety.  (TR 184-87.)  She was diagnosed with depression and other medical conditions.  (TR 188.)

In November 2009, Plaintiff was diagnosed with bipolar disorder.  (TR 208.)  At this time, her treating doctor noted that she was well groomed and oriented, her memory, insight, and

judgment were normal, and her behavior was appropriate, but her mood was anxious and depressed. (TR 201-09.)  Plaintiff was prescribed Klonopin, Celexa, and Lithium.  (TR 252.)  A February 2010 consultative examination by Dr. Ibrahim Youssef, M.D., resulted in similar findings: Plaintiff was well-dressed and appropriate in her attitude; she was friendly; she was not able to focus on simple questions at times; she maintained contact with reality; her affect was constricted and anxious; and she exhibited symptoms of depression.  (TR 212-14.)  Dr. Youssef diagnosed her with major depression, single episode, in partial remission and gave her a guarded prognosis.  (TR 214.)

In March 2010, a reviewing psychologist, Dr. Edward Czarnecki, Ph.D., determined that Plaintiff "had moderate limitations in carrying out her activities of daily living and maintaining social functioning" and that "she had marked limitation in maintaining concentration, persistence, or pace."  (*Id.* (citing TR 225).)  Dr. Czarnecki noted that Plaintiff is "sleepy during the day . . . doesn't get along with her family[;] . . . is on an emotional rollercoaster[;] . . . cries a lot[;] . . . notes problems with memory, completing tasks, concentration, understanding an getting along with others[;] . . . doesn't get along with authority figures[;] . . . doesn't like being told what to do[;] . . . [and] follows directions poorly."  (TR 227.)  He indicated that "[Plaintiff's] statements [were] credible."  (TR 227.)  Dr. Czarnecki finalized his report by stating that Plaintiff "is currently treated for Bipolar Disorder but *she remains highly symptomatic despite significant psychotropic medication.*"  (TR 229 (emphasis added).)  She "DOES NOT retain the mental capacity to SUSTAIN an INDEPENDENT routine of simple simple tasks on a consistent or reliable basis with a reasonable pace. . . . She could not tolerate or respond consistently or appropriately to even routine low stress social demands." (TR 229 (caps in original).) Dr. Czarnecki's RFC Assessment indicated that Plaintiff was at least somewhat limited in every category of Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation.  (TR 230-31.)  The

4

only categories in which Plaintiff was "Not Significantly Limited" were (1) her ability to understand and remember very short and simple instructions, (2) her ability to carry out very short and simple instructions, and (3) her ability to ask simple questions or request assistance.  (TR 230-31.)  In the remaining 16 applicable categories, Plaintiff was either moderately or markedly limited.  (TR 230-31.)

On June 4, 2010, Plaintiff's treating physician wrote a letter indicating that she was "totally disabled and can't hold a job due to bipolar illness."  (TR 296.)  Around that same time, in a June 2010 exam with another physician, Plaintiff indicated "extreme lethargy" from taking Lithium, so she was switched to Abilify.  (TR 266.)  Additionally, Plaintiff acknowledged that during periods of mania, she would stop taking her medications and go into a phase of depression for long periods of time.  (TR 266.)  Plaintiff was noted as having racing thoughts, panic symptoms, a depressed mood, and poor concentration; she was also irritable and distractible.  (TR 267.)  In August 2010, Plaintiff indicated that the Abilify stopped some of the "ups and downs," but it made her feel "edgy."  (TR 265.)

In September 2010, Plaintiff indicated that her main goals were to "stabilize [her] moods" and "decrease anxiety."  (TR 264.)  She indicated that her anxiety had improved, but she was still having trouble with concentration.  (TR 264.)  In October 2010, Plaintiff reported that she was "sleep[ing] great, [was] more relaxed, [and was] no [longer] edgy."  (TR 263.)  She indicated that she still had mood swings, but "not as bad as it was."  (TR 263.)  She also noted that most of her friends do drugs, and she "don't want to socialize with them."  (TR 263.)  By December 2010, Plaintiff indicated that her mood swings only came "once in a while," and she had no more anxiety.  (TR 262.)  And in a February 2011 follow-up RFC Assessment, Plaintiff was determined to have only a marked limitation in her ability to carry out detailed instructions and to maintain attention and

5

concentration for extended periods. (TR 297-98.) In all other areas, Plaintiff was only moderately limited or not significantly limited. (TR 297-98.)

### C.     The Vocational Expert

The ALJ asked the Vocational Expert (VE) to consider a hypothetical individual who was "a younger individual with impairments of Bipolar Affective Disorder, Generalized Anxiety Disorder." (TR 22.) The ALJ asked the VE to limit this individual's work to work that "was unskilled, with brief and superficial contact with the public and co-workers, and supervisors, and no rapid or frequent changes in work routine due to reduced stress tolerance." (TR 22-23.) The VE indicated that this hypothetical person would be precluded from performing Plaintiff's past work as a fast-food worker. (TR 23.)

The ALJ then asked if there were any jobs in the economy that from which this person would not be precluded. (TR 23.) The VE testified that the individual would be able to perform work as a packer, a bench assembler, or a polisher. (TR 23.) He indicated that in these fields, there would be some 71,900 jobs available in the State of Michigan and 1,148,000 jobs available nationally. (TR 23.) The ALJ then asked the VE to consider the same person but to add the limitation that the person need to be absent more than two days a month due to problems with concentration, persistence, or the ability to maintain a routine. (TR 23.) The VE testified that such an individual would not be employable. (TR 23-24.)

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements; had not engaged in substantial gainful activity since November 30, 2009; and suffered from severe bipolar affective disorder and generalized anxiety disorder; she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 32.) The ALJ found that

6

Plaintiff's allegations regarding the extent of her symptoms were "less than fully credible for a variety of reasons;" and although Plaintiff could not perform her past work, she had the ability to perform a limited range of unskilled work involving brief and superficial contact with the public, co-workers, and supervisors; thus, there were jobs that existed in significant numbers in the economy that Plaintiff could perform. (TR 34-39.) Therefore, she was not suffering from a disability under the Social Security Act from November 30, 2009, through the date of the ALJ's decision. (TR 40.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"

8

*Id.* (citations omitted).

## C.    Analysis

Plaintiff argues that (1) the Commissioner's finding that Claimant's conditions do not meet

or equal the conditions listed in Section 12.04  is not supported by substantial evidence (docket no.

9 at 14-21); and (2) the RFC presented to the VE for hypothetical purposes did not adequately reflect

Plaintiff's limitations (*id.* at 22-24).[2]

_____

[2]Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility.  (Docket no. 9 at 18.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But Credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*  "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*
    Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).
    The ALJ found that Plaintiff's subjective complaints are not fully credible. (TR 35). The ALJ reached this conclusion after reviewing Plaintiff's daily activities, the success of her treatment, her interest in receiving welfare, and her ability to participate in her hearing.  (TR 35-36.) Therefore, even if the Court disagrees with the ALJ, his determination is supported by the evidence in the record and is sufficiently specific to make clear to Plaintiff and the Court the weight given to Plaintiff's statements and the ALJ's reasons for that weight.  The ALJ could reasonably conclude that Plaintiff's subjective complaints regarding the extent to which she is impaired and the impact of her symptoms were not entirely credible. The ALJ's determinations

### 1.    Section 12.04

At step 3 of the Framework for Social Security Determinations, the ALJ determines whether a claimant's impairment or combination of impairments meets any of the "listed impairments" in 20 C.F.R. § 404 Subpt. P, App. 1.  Mental Disorders are discussed in Section 12.00.  If the ALJ finds that the claimant's impairments meet or equal these listed impairments, the claimant is disabled.  *Id.*

Section 12.04 defines *Affective Disorders* as "[c]haractarized by disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." *Id.* § 12.04. To qualify as disabled under section 12.04, a claimant must meet the requirements of both subsection A and subsection B or, in the alternative, meet the requirements of subsection C.  (*Id.*) Subsection A requires:

> Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>     a.  Anhedonia or pervasive loss of interest in almost all activities; or
>     b.  Appetite disturbance with change in weight; or
>     c.  Sleep disturbance; or
>     d.  Psychomotor agitation or retardation; or
>     e.  Decreased energy; or
>     f.  Feelings of guilt or worthlessness; or
>     g.  Difficulty concentrating or thinking; or
>     h.  Thoughts of suicide; or
>     i.  Hallucinations, delusions, or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
>     a.  Hyperactivity; or
>     b.  Pressure of speech; or
>     c.  Flight of ideas; or

---

regarding Plaintiff's credibility are supported by substantial evidence.

    d.  Inflated self-esteem; or
    e.  Decreased need for sleep; or
    f.  Easy distractibility; or
    g.  Involvement in activities that have a high probability of painful
    onsequences which are not recognized; or
    h.  Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

*Id.* at sub. A.  Subsection B requires that the conditions listed in Subsection A result in at least two

of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

*Id.* at sub. B.  Subsection C requires:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* at sub C.

The ALJ appears to have determined that Plaintiff met the criteria listed in Subsection A but

not those listed in Subsections B or C.  (TR 32-34.)  Plaintiff challenges the ALJ's determination

and claims that the record, as a whole, shows that she has marked difficulties in maintaining social

functioning ((B)(2)) and in maintaining concentration, persistence, or pace ((B)(3)).  (Docket no.

9 at 17-18.) Thus, Plaintiff argues that she meets the requirements of Subsections A and B. Defendant, however, asserts that substantial evidence supports the ALJ's determination. (Docket no. 11 at 14.)

The ALJ's written decision leaves much to be desired with regard to this issue. (*See* TR 33.) When considering Plaintiff's social functioning, the ALJ found that Plaintiff had moderate difficulties and based his decision on Plaintiff's living arrangements, her ability to spend time with her boyfriend and eat out with his family, and Dr. Czarnecki's determination that she had a moderate limitations in this area. (TR 33.) With regard to Plaintiff's concentration, persistence, and pace, the ALJ also found that she had moderate difficulties. (TR 33.)

Plaintiff asserts that the ALJ erred when he based his conclusions on this minimal evidence because the record is full of evidence showing marked limitation in both social functioning and concentration, persistence, or pace. (Docket no. 9 at 17-18.) Had the ALJ based his entire opinion on this evidence, the Court we be inclined to agree with Plaintiff. But the ALJ noted that his decisions were "based on the record as a whole," (TR 33) and as Defendant points out, the ALJ need not "spell[] out every consideration that went into [a] Step Three assessment." (Docket no. 11 at 13 (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 2006 WL 229795 at *3 (6th Cir. Jan. 31, 2006)).) A close review of Plaintiff's medical record indicates that she was moderately limited in social functioning. (*See, e.g.*, TR 208-31, 265-67.) The first objective evidence in the record shows that Plaintiff was markedly limited in her ability to interact with the general public and in her ability to get along with coworkers, but she was only moderately limited in her ability to accept instructions or maintain appropriate social behavior; she was not significantly limited in her ability to ask simple questions or request assistance. (TR 231.) And while Plaintiff argues that she did not get along with family, she had problems with panic attacks, and she was rude and irritable, it appears

that the change in her medication in June 2010 has helped her significantly.  (Docket no. 9 at 17; TR 262-64, 297-98.)  Thus, while the Court appreciates the difficulties faced by Plaintiff in light of her bipolar disorder, and even though substantial evidence exists to support a conclusion that she was markedly limited in her social functions, the record contains substantial evidence to support the ALJ's conclusion as well.  Therefore, even if the Court were to agree that Plaintiff had marked difficulty with regard to concentration, persistence, or pace, she would not be able to meet the requirements of Section 12.04(B).  For this reason, the Court recommends denying Plaintiff's Motion with regard to the ALJ's finding at Step Three.

### 2.        The Hypothetical RFC

Plaintiff argues that the hypothetical posed to the VE to determine Plaintiff's employability was deficient because the ALJ failed to include a substantial number of limitations included in Dr. Czarnecki's March 25, 2010 RFC Assessment and two of the limitations included in a February 2011 assessment by Plaintiff's treating psychiatrist, Dr. Raad Jayum.  (Docket no. 9 at 22-23.) Defendant argues that the ALJ appropriately afforded controlling weight to Dr. Jayum's opinion and that the ALJ's hypothetical did account for the limitation in the February 2011 assessment.  (Docket no. 11 at 15-18.)

The ALJ provided a substantial explanation regarding his decision to afford controlling weight to Dr. Jayum's assessment, including the regularity of Plaintiff's treatment and the timing of the February 2011 assessment.  (TR 37-38.)  Thus, with respect to the limitations included in Plaintiff's various RFC assessments, the ALJ's decision to include only those limitations noted in Dr. Jayum's February 2011 assessment is supported by substantial evidence.

The February 2011 assessment included marked limitations in Plaintiff's ability to carry out detailed instructions and to maintain attention and concentration for extended periods.  (TR 297.)

13

Plaintiff continued to experience moderate or non-significant limitations with regard to other functions. (TR 297.)

The ALJ's hypothetical instruction the VE to consider work that "was unskilled, with brief and superficial contact with the public and co-workers, and supervisors, and no rapid or frequent changes in work routine due to reduced stress tolerance." (TR 23-24.) Defendant argues that, by definition, unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." (Docket no. 11 at 18 (citing 20 C.F.R. § 415.968(a)).) Thus, Defendant contends, the ALJ's question did not require the hypothetical person to "carry out detailed instructions." (*Id.*) Similarly, Defendant asserts that unskilled work does not require an individual to pay close attention or maintain alertness; these requirements are included in the definition of "semi-skilled work." (*Id.*) The Court agrees and, therefore, recommends denying Plaintiff's Motion with regard to the ALJ's hypothetical.

## VI.    CONCLUSION

For the above-stated reasons, the Court recommends DENYING Plaintiff's motion for summary judgment, GRANTING Defendant's motion for summary judgment, and DISMISSING this case.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 22, 2013          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 22, 2013          s/ Lisa C. Bartlett
                                 Case Manager

15